

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0857-14

**KENNETH LEE DOUDS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### BRAZORIA COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., JOHNSON, RICHARDSON and YEARY, JJ., joined. KEASLER, HERVEY, and NEWELL, JJ., concurred. MEYERS, J., filed a dissenting opinion.

### O P I N I O N

Are isolated statements globally asserting that a blood draw was conducted without a warrant enough to apprise the trial court that it must consider whether there were exigent circumstances to permit a warrantless search in a driving while intoxicated case, when the context of the entire record in a motion to suppress refers to a different complaint? We conclude that the answer to this question is "no." Because this record shows that Kenneth Lee Douds, appellant, failed to preserve his complaint that the search was conducted in the

absence of exigent circumstances or some other valid exception to the warrant requirement, we sustain the State's first ground in its petition for discretionary review that contends that the court of appeals erred by reversing his conviction for misdemeanor DWI. *See Douds v. State*, 434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2014) (en banc, op. on reh'g). We accordingly reverse the judgment of the court of appeals and render judgment affirming appellant's conviction.

## I. Background

### A. Appellant's Arrest and Trial

One night in 2010, at around 2:30 a.m., appellant was driving in Pearland with his wife, Christen, in the front passenger seat, when his car collided with the rear end of the car in front of him.[1] The occupants of the other car were appellant's friends, whom he and Christen were following to another location after leaving a party. Two officers, Niemeyer and Tran of the Pearland Police Department, and emergency medical services personnel responded to the scene. Christen complained of chest and rib pain and said that she could not move her right arm, but she refused to be transported to the hospital by EMS. After EMS left the scene, Officer Tran suggested to the occupants of the other vehicle that Christen needed to be checked out and possibly have some X-rays. The driver of the other vehicle, Robin, replied, "We're taking her," which Officer Tran understood as indicating that Robin would be taking Christen to a hospital or emergency center.

---

[1] Appellant's wife is referred to in the record as both "Christen" and "Brooke." Appellant's briefing suggests that his wife's full name is "Christen Brooke Douds."

Officer Tran subjected appellant to field sobriety testing, and he determined that appellant was intoxicated. Tran then arrested appellant for DWI. After transporting appellant to the police station, Tran provided statutory warnings to him and requested that he provide a breath specimen. Appellant refused. Tran then determined, based on his belief that appellant's wife had been injured as a result of the accident and required medical treatment, that appellant was subject to a mandatory blood draw pursuant to the provisions in the Transportation Code.[2] Tran took appellant to a medical center for a compulsory blood draw, and appellant's blood was drawn at 4:45 a.m. No warrant was obtained prior to the search. The results of appellant's blood test revealed a blood-alcohol concentration of .209.

After he was charged with second-offense DWI,[3] appellant filed two pretrial motions to suppress in the trial court. In the first of these motions, entitled "Motion to Suppress Blood Test," appellant asserted that he was arrested and searched without a valid warrant, reasonable suspicion, or probable cause, and he further alleged that his blood had been obtained in violation of the terms of the mandatory-blood-draw statute, which requires an officer to collect a blood specimen if he reasonably believes that the suspect has caused a car accident that resulted in bodily injury to another person requiring that person to be transported to a medical facility for treatment.[4] Appellant moved the trial court to suppress

---

[2]*See* TEX. TRANSP. CODE § 724.012(b)(1)(C).

[3]TEX. PENAL CODE §§ 49.04(a), 49.09(a).

[4]*See* TEX. TRANSP. CODE § 724.012(b)(1)(C).

all evidence seized as a result of the illegal arrest and search, including "all evidence based on the blood-test results," and "any and all statements."[5] In his second motion, entitled "Motion to Suppress Test, Videotape, Statements," appellant asserted that he was seized without any reasonable suspicion that he was engaged in criminal activity.

The trial court held an evidentiary hearing, at which Officer Tran was the sole witness.

---

[5]Appellant's "Motion to Suppress Blood Test" stated, in relevant part,

1. On or about May 16, 2010, the defendant was arrested without a warrant for Driving While Intoxicated, 2nd offense.
2. The arrest and search of the defendant was without valid warrant, reasonable suspicion, or probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and Article 38.23 and Chapter 14 of the Texas Code of Criminal Procedure . . . .
3. All statements made, either oral or written, and any acts performed after said seizure of the defendant are fruits of the illegal arrest and search and are therefore inadmissible . . . .
4. Because the defendant was illegally detained but not arrested, there was no deemed consent to the taking of a blood specimen under Section 724.011, Tex. Transp. Code Ann. (Vernon). The officers also failed to give the defendant the required statutory warning under Section 724.015, Tex. Transp. Code Ann. (Vernon). Thus the blood seized from the defendant and the blood alcohol concentration analysis should be suppressed as the defendant's blood was taken in violation of the defendant's rights. The defendant also did not voluntarily, knowingly, and intelligently consent to the blood test. The defendant was compelled to provide a mandatory specimen of blood pursuant to the officer instruction. The officer alleged the blood was taken under the authority of Texas Transportation Code 724.012(b)(1)(C) which authorizes the taking of a mandatory specimen when the officer reasonably believes an injured party other than the defendant is being transported to a hospital. In this cause no one was transported to the hospital and the officer had no basis for the said reasonable belief.

Appellant concluded by moving the trial court to suppress "all evidence based on the blood test results, and any and all statements, either oral or written, made pursuant to or after the arrest of the defendant." In addition to these proposed bases for suppressing the evidence, appellant additionally complained that his blood was not taken within a reasonable period of time and that the person who withdrew his blood was not a qualified technician within the meaning of TEX. TRANSP. CODE § 724.017.

The focus of the questioning at the hearing was on whether Officer Tran was reasonable in believing that Christen was injured and had been transported for medical treatment as a result of the accident, which was Tran's basis for subjecting appellant to a mandatory blood draw under Transportation Code Section 724.012(b).[6] In addition to considering Tran's testimony, the trial court admitted into evidence Tran's patrol-car videotape and accident-investigation report.

After the close of evidence, the trial court heard arguments and requested briefing from the parties. Appellant expressly told the trial court that he was limiting his second motion to a complaint about the admission of his oral statements. Appellant's counsel stated, "To narrow the issue for the Court, my argument on the second motion [to suppress the field sobriety tests, video, and appellant's statements] is just that [Tran] testified that he made the decision to arrest prior to a bunch of questioning; and I would argue that *Miranda* didn't apply, although I haven't researched that very well and I can't say."[7] With respect to the first motion, the parties focused on whether Officer Tran was reasonable in believing that

---

[6]*See* TEX. TRANSP. CODE § 724.012(b)(1)(C).

[7]We note here that the hearing on appellant's motions took place in April 2011, which was two years prior to the Supreme Court's opinion in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), in which the Supreme Court rejected a *per se* rule of exigency in DWI cases based solely on the natural dissipation of alcohol from the bloodstream. Whereas *McNeely* has served as the basis for many subsequent challenges to searches conducted pursuant to Texas's mandatory-blood-draw statute, we observe that, because that opinion had not yet been issued at the time of appellant's trial proceedings, the parties would not have been aware either of the Supreme Court's holding rejecting a rule of *per se* exigency in DWI cases, nor would they have been aware of the possible implications for the constitutionality of a mandatory blood draw conducted pursuant to the provisions in the Transportation Code, which appear to create a *per se* rule of exigency in certain situations, such as in a situation involving an injury-related accident. *See* TEX. TRANSP. CODE § 724.012(b)(1)(C).

Christen was injured and had been transported for medical treatment as a result of the accident and on whether that evidence met the statutory requirements for a mandatory blood draw. The trial court subsequently issued a single order denying both of appellant's motions. Pursuant to a plea agreement, appellant pleaded guilty to the reduced charge of Class B misdemeanor DWI. The trial court certified his right to appeal the denial of his motions to suppress. Appellant did not request that the trial judge make written findings of fact and conclusions of law, and none were entered.

## B. The Appellate Proceedings

On appeal, appellant challenged the trial court's denial of his motion to suppress the blood-specimen evidence. He asserted both that (1) the statutory requirements for a mandatory blood draw had not been met because Christen was not injured and did not seek medical treatment, and (2) the mandatory-blood-draw statute, as applied to him, had resulted in a warrantless seizure of his blood in violation of the Fourth Amendment. In October 2013, a three-judge panel issued an opinion rejecting appellant's appeal, and it affirmed the conviction.[8] Appellant filed a motion for *en banc* reconsideration, which was granted. In June 2014, five justices of a closely divided *en banc* Fourteenth Court of Appeals vacated the panel's prior judgment and withdrew its opinion. *See Douds*, 434 S.W.3d at 862. In its place, the court issued a new opinion in which it concluded that there were no exigent circumstances that justified the warrantless taking of appellant's blood. The court held that

---

[8]*Douds v. State*, No. 14-12-00642-CR, 2013 WL 5629818 (Tex. App.—Houston [14th Dist.] Oct. 15, 2013).

his conviction must be reversed because the blood draw constituted an unreasonable warrantless seizure in violation of the Fourth Amendment. *Id.* at 845, 862.

Addressing appellant's first argument that the statutory requirements for a mandatory blood draw had not been met, the court of appeals determined that the facts supported the trial court's implicit determination that Christen had bodily injury that required her to be transported to a medical facility for treatment. *Id.* at 846-47. This ground is not before us in this petition for discretionary review.

Addressing appellant's second argument that the mandatory-blood-draw statute, as applied to him, had resulted in a warrantless seizure of his blood in violation of the Fourth Amendment, the court of appeals began by addressing whether that complaint was preserved for appeal. *Id.* at 849. The court of appeals determined that appellant had satisfied his initial burden of producing evidence to rebut the presumption of proper police conduct by establishing that the search occurred without a warrant, and that it then became the State's burden to prove that the search and seizure was reasonable. *Id.* Because both the State and the trial court were made aware that appellant's complaint pertained to a warrantless search in violation of the Fourth Amendment, the court of appeals held that appellant had adequately preserved his complaint. *Id.* Having decided that his complaint was preserved, the court of appeals addressed its merits. The court concluded that a warrant was required for a blood draw in a DWI case or that an exception to the warrant requirement had to be shown by the facts. *Douds*, 434 S.W.3d at 845, 848. Because it had "no facts from which to conclude

that a reasonable officer" would have decided that obtaining a warrant was impractical, it reversed appellant's conviction. *Id.* at 856, 861.

## II. Appellant Failed to Preserve Error as to His Fourth Amendment Complaint

Although we agree with the court of appeals's and appellant's representations about the applicable law, we disagree that appellant's isolated statements globally asserting that a blood draw was conducted without a warrant were enough to apprise the trial court that it must consider whether there were exigent circumstances to permit the warrantless search.

In order to preserve an issue for appeal, a timely objection must be made that states the specific ground of objection, if the specific ground was not apparent from the context. *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). Rule of Appellate Procedure 33.1(a) provides that, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" stating the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). The purpose for requiring a timely, specific objection is twofold: (1) it informs the judge of the basis of the objection and affords him an opportunity to rule on it, and (2) it affords opposing counsel an opportunity to respond to the complaint. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977); *see also Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009). "As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to

let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). We have observed that, in resolving questions of preservation of error, we may not consider arguments in isolation, but we instead must look to the context of the entire record. *See Resendez*, 306 S.W.3d at 313.

Because appellant expressly stated at the end of the evidentiary hearing that he was narrowing his second motion to his complaint about the admission of oral statements, we must address only whether his first motion apprised the trial court of the complaint he presents in this appeal. To the extent that appellant's first written motion, viewed in isolation, could be construed as also having presented a Fourth Amendment complaint based on Officer Tran's failure to secure a search warrant prior to collecting a blood specimen, the motion, when viewed in the context of the entire record, reasonably shows that the trial court was fairly apprised solely of appellant's argument that the requirements of the mandatory-blood-draw statute had not been met by the officer's testimony describing the passenger's injuries. With the exception of evidence aimed at suppressing appellant's oral statements, the arguments and evidence at the hearing were narrowly focused on challenging the reasonableness of Officer Tran's belief that Christen was being transported for medical care.[9]

---

[9]The following excerpts are representative of appellant's counsel's questioning of Officer Tran at the hearing:

Counsel: [T]o be specific, your decision to force [appellant] to take a specimen was based upon section 724.012 of the Texas Transportation Code

After the close of evidence, the trial-court judge stated that she had "a few questions with regard to the motion to suppress blood test," and she asked the parties whether there were any cases on point. In response to that inquiry, appellant's counsel initially stated that there were not. He then offered to provide the trial court with an article that "broke down the new statute and the legislative history and was very specific about the need for transport" to the hospital before a mandatory blood draw would be permitted under these circumstances. He additionally directed the trial court to *Schmerber v. California*,[10] which he indicated required that courts "construe these statutes as narrowly as possible to make sure that they

---

|  |  |
|---|---|
|  | that allows you to take a specimen from an individual when an individual other than the person has suffered bodily injury and been transported to a hospital or medical facility for [ ] treatment? |
| Tran: | Correct. |
| . . . |  |
| Counsel: | So, it's your testimony . . . that Mrs. Douds stated that she didn't want to go to Pearland [Hospital] via EMS, that her friend would take her? |
| Tran: | Right. She told me she [was] going to go to medical treatment . . . but she doesn't want to go with Pearland EMS. |
| Counsel: | Okay. So, she said to you she wanted to get medical attention? |
| Tran: | Right. She said, "I want to go, but I want to go with my friend," or something to that effect. |
| . . . |  |
| Counsel: | You also wrote [in your report] that Robin assured [you] that she would take Christen to a local emergency center? |
| Tran: | Correct. |
| Counsel: | Robin never said that, did she? |
| Tran: | She did. She said, "We will take her." |
| Counsel: | Actually, they said, "We will take her"; they didn't say where, right? |
| Tran: | Correct. |

[10]384 U.S. 757, 86 S. Ct. 1826 (1966).

don't impugn the Fourth Amendment." The State in turn suggested that the case law in this area "simply says that as long as [an officer] reasonably believes" that the statutory prerequisites for a mandatory blood draw are met, "it doesn't matter if it subsequently turns out" not to be true; the State contended that "it's still a good blood draw and has been allowed in cases." In response to these comments from the parties, the trial-court judge stated that she wanted "time to read the code" and "see what [she could] find on it." She also invited the parties to submit briefs as to both motions.

In his post-hearing brief submitted to the trial court in support of his motion to suppress the blood evidence, appellant stated that he had been subjected to a mandatory blood draw pursuant to Transportation Code Section 724.012(b)(1)(C), which, he suggested, "requires a peace officer to subject a person arrested for DWI to a mandatory blood draw when a peace officer has reasonable grounds to believe" that the statutory requirements are met. He continued by asserting that the mandatory-blood-draw statute "is commonly referred to as the implied consent law" and "specifically abrogates the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and Article 38.23 [of the Code of Criminal Procedure] when an officer ascertains specific, articulable facts which satisfy specific predicates necessary for the statute's application." Appellant's brief continued,

> Any statutory abrogation of the Fourth Amendment must be specifically and narrowly construed . . . . Both Texas and Federal courts unanimously agree that the taking of a blood sample implicates the Fourth Amendment . . . . Moreover, the Texas Court of Criminal Appeals has held that the taking of a blood sample

is a search and seizure within the meaning of article I, section 9 of the Texas Constitution, and that the State is required to comply with the applicable statutory protections for searches and seizures. Additionally, the court of criminal appeals has followed *Schmerber* by requiring probable cause, exigent circumstances, and a reasonable method of extraction to be shown before a warrantless search and seizure of a blood sample will be held to be reasonable.

Appellant also argued that Section 724.012 must be interpreted in light of its "literal text," and he urged that an officer's belief that a defendant is subject to the provisions of that statute "must be based upon specific and articulable facts." Observing that Officer Tran had "testified at the hearing that his application of the implied consent law was based upon his reasonable belief that [Christen] was being transported to the hospital thus triggering the implied consent law," appellant contested the credibility of Officer Tran's testimony as to that matter. Appellant's brief concluded:

Officer Tran only testified that he believed [Christen] would seek medical attention at some unknown point in the future and that fails to satisfy the statutory predicate defined by 724.012(b)(1)(C). The words 'been transported' are not surplusage and by the aforementioned rules of statutory interpretation cannot be ignored or discounted.

In response to appellant's arguments, the State filed a trial brief asserting that appellant's motion should be denied because Officer Tran's actions "comported with the plain meaning" of the mandatory-blood-draw statute in light of his reasonable belief "that [Christen] had suffered bodily injury[ ] and was going to receive medical treatment from a hospital or medical facility."

Viewing appellant's arguments in their entirety, we conclude that they can be fairly characterized as presenting a challenge to the admissibility of the blood evidence only on the

basis of Officer Tran's application of the mandatory-blood-draw statute to appellant's case. Appellant's counsel's questions and arguments at the hearing were devoted solely to establishing that the statutory requirements for a mandatory blood draw had not been met. Furthermore, to the extent that appellant mentioned Fourth Amendment principles at all during the hearing, it was for the sole purpose of asserting that, in light of those principles, the statute must be narrowly construed. Given this persistent emphasis on the statutory violation, nothing about appellant's counsel's arguments indicated that appellant was further challenging the constitutionality of the search based on the fact that it had been conducted without a warrant. Neither appellant's nor the State's counsel addressed the necessity of obtaining a warrant prior to the mandatory blood draw, nor was Officer Tran asked to provide any testimony regarding the procedures for requesting a warrant during nighttime hours, his rationale for not obtaining a warrant, or whether obtaining a warrant would have been feasible under the circumstances. In fact, as the court of appeals noted, the record of the suppression hearing "does not mention a warrant at all." *Douds*, 434 S.W.3d at 855.

The arguments contained in appellant's trial brief further reflect the narrow scope of his complaint as being limited to alleging a violation of Section 724.012(b). In particular, appellant's brief appears to concede that the mandatory-blood-draw statute constitutes a valid abrogation of the Fourth Amendment that would permit a warrantless search under the appropriate circumstances as defined by the statute; his sole contention was that those circumstances did not exist in his case. Given this implicit concession by appellant that the

statute effectively constitutes a valid exception to the warrant requirement, the only real question for the trial court to resolve was whether the statutory terms applied to appellant's case. If they did, as the trial court concluded, then neither a statutory nor a constitutional violation had occurred. In light of appellant's concession as to the validity of a search properly conducted pursuant to the statutory terms, his arguments would not have fairly placed the trial court on notice of any argument that an officer acting pursuant to the statute's authority is additionally required by the Fourth Amendment to obtain a warrant prior to conducting a blood draw. Viewing the entirety of the record in context, we, therefore, conclude that the trial court would not have been placed on notice as to appellant's constitutional complaint and would not have had any opportunity to rule on it.

## III. Conclusion

We conclude that appellant failed to preserve error with respect to his Fourth Amendment complaint that the blood evidence was subject to suppression on the basis that it was obtained without a warrant. We reverse the judgment of the court of appeals and render judgment affirming appellant's conviction.

Delivered: October 14, 2015

Publish