

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-16-00197-CR

AUSTIN TAYLOR COPPLE                                                                 APPELLANT

V.

THE STATE OF TEXAS                                                                        STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
### TRIAL COURT NO. 1411370D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Austin Taylor Copple appeals his conviction for aggravated assault with a deadly weapon.[2] He contends that the evidence is insufficient to support his conviction and that the trial court abused its discretion by admitting the deadly weapon—a machete. We conclude that the evidence is sufficient to

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011).

support appellant's conviction and that any error by the trial court in admitting the machete is harmless. We therefore affirm the trial court's judgment.

**Background Facts**

Lance Boltz, a Bedford resident, owned a home repair and landscaping business. Appellant occasionally worked for Boltz and lived with him for about a month. Near 2 a.m. one day in the spring of 2015, after appellant had stopped living with Boltz, appellant called him. Appellant asked Boltz to drive him to a job later that morning. Boltz agreed to do so and picked appellant up from a house in North Richland Hills. They both returned to Boltz's house. According to Boltz, he told Wesley Price, another houseguest, about appellant's presence there.[3] Boltz then went into his room and fell asleep.

Later, Boltz awoke when someone began repeatedly striking his head. Through some light coming from a fish aquarium, Boltz saw a silhouette of his attacker and of a machete that Boltz used in his lawn service business. Boltz raised his hands to protect against the blows, but the attacker hit his hands with the machete, and Boltz blacked out.

When Boltz regained consciousness, he noticed that he was bleeding. He got out of his bed and attempted to shut and lock his bedroom door, but someone again began striking his head. From the limited light in the room, including the aquarium light and light from a neighbor's house, Boltz recognized

---

[3]Price denied learning from Boltz that someone else was spending the night in Boltz's house, and he stated that he never saw appellant in the house.

appellant as the attacker. Appellant was wearing the same clothes as when Boltz had picked him up, including a dark shirt and a hunting vest. As appellant continued striking Boltz, Boltz again blacked out.

When Boltz came to, he walked into a bathroom, locked the door, and realized that he had "a lot of blood profusely pouring down the front of [his] face." Price awoke and came to the bathroom, and Boltz asked Price to get help. Price noticed that Boltz's Samsung cell phone was missing, and Price went to another house to get help. An ambulance arrived and transported Boltz to a hospital, where he received treatment for injuries to several parts of his body.[4]

Police officer Michael Kratky interviewed Boltz at the hospital. Officer Kratky saw that Boltz had several injuries and had been bleeding. Boltz told Officer Kratky that appellant had attacked him. At about 7 a.m. that day, Detective Anthony Shelly received a call about the assault. He went to Boltz's house and saw blood covering floors, pillows, and sheets.

Without any knowledge of what had occurred at Boltz's house, Officer Rodney Pace was working in Hurst and received a call about a man engaging in suspicious acts there. Officer Pace found appellant, who matched the description given in the call. According to Officer Pace, appellant was "scratched up" and had no shoes on.[5] Officer Pace noticed that appellant "was obviously

---

[4]The trial court admitted photographs depicting Boltz's injuries.

[5]The jury saw photographs showing scratches on appellant's arms and head along with a tear in the shirt he was wearing.

3

high on some kind of drug." Appellant could not provide a sensible story about why he was there.

Investigator Zachary Hicks became involved in the investigation into the assault on Boltz. Looking for evidence related to the assault, he walked on a path from Boltz's house to where Officer Pace had found appellant. In a drainage area along that path, he found a machete, a Samsung cell phone battery, and a package of bandages that matched a bandage that appellant had in his pocket upon his arrest.

When Boltz returned home from the hospital weeks later, he found the shirt and vest that appellant had worn on the night of the assault. Those items were "caked in blood." He also found the Nike shoes that appellant had worn that night.

A grand jury indicted appellant for aggravated assault. The indictment alleged that he had used the machete as a deadly weapon. It also contained a habitual offender notice that alleged that he had been previously convicted of burglary and manslaughter. Appellant received appointed counsel and pled not guilty. After receiving the parties' evidence and arguments, the jury deliberated for less than an hour and found him guilty. During the punishment phase of the trial, appellant pled true to the indictment's sentence-enhancement allegations. The jury received more evidence and arguments concerning his punishment and assessed seventy-five years' confinement. The trial court sentenced appellant accordingly, and he brought this appeal.

**Evidentiary Sufficiency**

In his first issue, appellant contends that the evidence is insufficient to support the jury's guilty verdict. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder

resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

Appellant argues that the evidence is insufficient to establish his identity as Boltz's attacker. The jury, however, received direct and circumstantial evidence linking appellant to the attack.

First, Boltz identified appellant at trial as his attacker, and the jury was entitled to rely on that identification despite appellant's challenge to it.[6] *See Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.) ("[T]he jury is free to accept or reject any or all of the evidence of either party, and any or all of the testimony of any witness."); *see also Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004) (relying on eyewitness testimony as sufficient to show a defendant's identity as a shooter). When the State asked Boltz why he was sure that appellant rather than Price had attacked him, he testified, "Due to the extraordinary amount of light that was coming in through the doorway being open, the aquarium, plus the light from the neighbor's [house], [the] whole left side of [appellant's] body was lit up." The State asked Boltz how precise his vision was that morning, and he responded, "It was good for one reason. My eyes had . . . dilated to the darkness. And as I came out of what I

---

[6]Appellant argues, in part, that Boltz's eyewitness identification "is very questionable . . . because of his drifting in and out of consciousness . . . and his statement of blacking out at least three times."

6

assume was blacking out, . . . the aperture of my eye was open wide enough that I could see very clearly . . . ."

Second, circumstantial evidence supports appellant's guilt. The jury learned that when Officer Pace found appellant, appellant had scratches and no shoes. The jury could have rationally inferred that the scratches occurred during the machete attack, and Boltz later found appellant's shoes at his house. Further, on the path from Boltz's house to where Officer Pace found appellant, the police found a machete and bandages that matched a bandage that appellant had in his pocket upon his arrest. The police also found a Samsung cell phone battery, and the jury heard that Boltz's Samsung phone was missing after the attack. Finally, and perhaps most significantly, when Boltz returned home from the hospital, he found clothes that appellant had been wearing on the morning of the attack, and those clothes were "caked in blood."

Considering this evidence and the remaining evidence in the record in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed aggravated assault against Boltz. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Murray*, 457 S.W.3d at 448. We overrule appellant's first issue.

### Admission of the Machete

In his second issue, appellant argues that the trial court abused its discretion by admitting the machete that Investigator Hicks found in the drainage area. He contends that the machete was inadmissible because Boltz did not

7

identify it as the one he owned and as the one used in the attack. We conclude that appellant failed to preserve this complaint for our review because he failed to object to testimony concerning the machete before and after the machete's admission.

To preserve a complaint for our review, a party must have presented to the trial court a timely objection that states the specific grounds for the desired ruling if they are not apparent from the context of the objection. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). Furthermore, the preservation rule requires a party to object each time objectionable evidence is offered unless the party has obtained a running objection or has requested a hearing outside the presence of the jury. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that Texas applies the "futility rule," meaning that despite a trial court's ruling that evidence is admissible, a party must keep making futile objections on pain of waiver). Unobjected-to testimony about objected-to evidence results in forfeiture of the objection. *See Clay v. State*, 361 S.W.3d 762, 767 (Tex. App.—Fort Worth 2012, no pet.) ("[B]ecause Wallace provided testimony about the Louisiana records without objection before and after appellant's objection to the admission of the records and because appellant failed to obtain a running objection, we conclude that he forfeited his objection to the records' admission." (footnote omitted)); *see also Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. [Panel

8

Op.] 1980) (holding that a complaint concerning the admission of LSD tablets and marijuana was not preserved because "[a]ssuming there was some objection to this evidence when offered, there was no objection to [a police officer's] testimony about finding the narcotics"); *Ratliff v. State*, 320 S.W.3d 857, 861 (Tex. App.—Fort Worth 2010, pet. ref'd) ("If the defendant waits until the State offers the evidence at trial, the objection to the evidence must be made before a witness gives substantial testimony about it."); *King v. State*, No. 02-07-00172-CR, 2008 WL 3918051, at *3 (Tex. App.—Fort Worth Aug. 26, 2008, pet. ref'd) (mem. op., not designated for publication) ("When a party objects to the admission of physical . . . evidence after a police officer has already testified about finding the [evidence] without objection, nothing is presented for review.").

Before the trial court admitted the machete, Detective Shelly testified that Investigator Hicks had found it. Investigator Hicks then testified about finding the machete. Later, the State asked a crime scene technician about where the machete was found, and the trial court admitted, without objection, photographs of the machete. Also without objection, the State published those photographs to the jury. During the technician's testimony, when the State offered the machete as evidence, appellant objected on the grounds that the State had not shown that the "weapon ha[d] anything to do with the [assault]" and that the weapon's prejudicial effect outweighed its probative value. The trial court overruled the objection and stated on the record that the machete's probative value

9

outweighed any prejudicial effect. The State then asked the technician several more questions about the machete without any further objection.

Based on the authority cited above, we conclude that the unobjected-to testimony about the machete before and after its admission forfeited appellant's objection. *See* Tex. R. App. P. 33.1(a); *Marini*, 593 S.W.2d at 714; *Ratliff*, 320 S.W.3d at 861; *King*, 2008 WL 3918051, at *3.[7] We overrule his second issue.

## Conclusion

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GABRIEL and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 6, 2017

---

[7]Appellant also appears to argue that the trial court erred by commenting that the machete's probative value outweighed its prejudicial effect. Appellant concedes, however, that he did not object to the comment and that an objection was required to preserve error. We agree. *See* Tex. R. App. P. 33.1(a); *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). Thus, assuming that appellant attempts to argue that the trial court's comment serves as an independent ground for reversal, we reject that contention.