# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00246-CR

**Joseph Karr, Appellant**

**v.**

**State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-14-302194, HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Joseph Karr guilty of murder and assessed punishment at life in prison and a fine of $10,000. *See* Tex. Penal Code § 19.02. In one issue on appeal, Karr contends that the trial court abused its discretion in admitting certain photographic evidence. We will affirm the trial court's judgment of conviction.

## BACKGROUND

In October of 2014, Karr and his girlfriend, Kelly Turner, traveled from California to Austin, Texas. The couple had been dating since June of 2014, and the trip to Austin was intended to allow Karr to meet many of Turner's friends and family for the first time. On October 31, Turner and Karr went out to dinner with some of Turner's friends, including Jancy Darling and her boyfriend, Michael Hammond. Around 11:30 p.m., the two couples returned to Darling's home,

where Turner and Karr were staying that night. Darling and Hammond soon went upstairs to go to bed, leaving Turner and Karr in the downstairs kitchen.

That night, Darling awoke suddenly when she heard Turner scream like she had "never heard a human scream . . . before." Darling immediately called 9-1-1. Hammond, also having heard the scream, got out of bed, grabbed a gun, and walked out of the bedroom. According to his testimony at trial, Hammond was standing at the top of the stairs when he heard a struggle taking place downstairs. Hammond testified that he heard what sounded like movement and male grunting and then Turner stating, in a pleading tone, "I love you." Hammond then spotted Karr at the bottom of the stairs, pacing with blood on the front of his shirt. Hammond told the jury that Karr was holding a knife pointed toward himself and was saying, "I killed her, I killed her." Karr began to walk up the stairs when Hammond, pointing the gun at Karr, commanded him to "stay down." Karr then grabbed Hammond's keys, walked out the door, and left in Hammond's vehicle.

Officers with the Austin Police Department (APD) responded to Darling's 9-1-1 call. On arrival at Darling's home, the officers noticed droplets of blood in the driveway and, as they entered the home, more blood on the floor inside the front entry way. Eventually, the officers discovered Turner's lifeless body in a pool of blood in the kitchen.

After securing the scene at Darling's home, a manhunt began for Karr. That afternoon, Hammond's vehicle was found abandoned in northern Hays County by a deputy with the Hays County Sheriff's Office. Officers with APD and Hays County searched the surrounding area for several hours and eventually found Karr in a nearby field. Officers attempted to negotiate a peaceful surrender with Karr, who was wielding a knife. When Karr appeared to shove the knife in his chest,

officers subdued him by shooting him with "bean bags." Karr was subsequently treated for his injuries by EMS and taken to the hospital.

At trial, Karr testified in his own defense and presented a very different version of the critical events that evening. According to Karr, he had gone downstairs to the kitchen to get a drink of water when he was aggressively confronted by Turner. Karr testified that Turner questioned him about why he had decided to come to the kitchen and said, "Don't argue with me or I'm going to have to kill you." According to Karr, Turner eventually told him, "Look at me when I'm talking to you or I'm going to kill you," and then hit him in the chest with a knife. Karr then put his hands up defensively and a struggle ensued whereby Karr was attacked by Turner and stabbed several more times. In the course of the struggle, Karr was able to grab the knife during the struggle, but Turner continued to assault him with her hands while "screaming and grunting horrifically." According to Karr, he was hyperventilating and suffering in pain when he blacked out and could not "remember everything that happened from then." Eventually, Karr made his way to the bottom of the stairway where he saw Hammond at the top of the stairs holding a gun. According to Karr, he told Hammond, "Please help me, she tried to kill me, I don't know what's going on, please help, I need your help badly, I'm injured, she's injured, we're suffering, help us." Karr testified that he fled the house, in fear for his life. At the conclusion of the trial, the jury found Karr guilty of murder.

**ANALYSIS**

In one issue on appeal, Karr complains that the trial court abused its discretion in admitting the State's exhibits 124-128, 130-131, and 133-136, comprised of photographs of swords, knives, and axes, as well as photographs of Karr holding a sword and working in what appears to

3

be a blacksmith shop. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (trial court decision to admit evidence reviewed under abuse-of-discretion standard). According to Karr, the trial court should not have admitted the evidence because any probative value of the photos was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. *See* Tex. R. Evid. 403.

In response, the State first argues that Karr failed to adequately preserve his evidentiary issue for appeal. Second, the State argues, in the alternative, that the trial court did not abuse its discretion in admitting the exhibits because the evidence went to Karr's credibility as a witness—namely, it served to impeach Karr's direct testimony concerning the nature and scope of his profession—and posed little danger, if any, of unfair prejudice. Finally, the State contends any error made by the trial court in admitting the photos was harmless because it did not affect Karr's substantial rights. Because a reviewing court should not address the merits of a complaint not preserved for appeal, we will address the State's preservation argument first. *See Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012) ("[W]here an issue has not been properly preserved for appeal, 'neither the court of appeals nor this court should address the merits of that issue.'" (citation omitted)).

Preservation of error is a systemic requirement on appeal. *See id.* To properly preserve a complaint regarding the admission of evidence, the Texas Rules of Appellate Procedure require that the record show that a "complaint was made by a timely, request, objection, or motion" stating the grounds for the ruling sought from the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Douds*

*v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015) (quoting Tex. R. App. P. 33.1(a)(1)(A)).

While no "hyper-technical or formalistic use of words or phrases" is required for an objection to

preserve error, the objecting party must still "let the trial judge know what he wants, why he thinks

he is entitled to it, and do so clearly enough for the judge to understand him at a time when the judge

is in the proper position to do something about it." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim.

App. 2012) (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)). When the point

of error on appeal does not comport with the objection made at trial, error is not preserved on that

complaint. *Id*. at 339.

At trial, Karr testified that he works as a "metal fabricator, blacksmith" and builds

"architectural metal pieces for homeowners, contractors, galleries, and businesses." On cross-

examination, the State sought to question Karr about the scope of his profession and, more

specifically, his experience working with sharp objects, such as swords, knives, and axes. When the

State moved to introduce the photos showing Karr in his workshop with sharp objects and depicting

swords, knives, and axes representative of those that Karr had worked with, made, or repaired, the

following exchange took place:

DEFENSE: What's the relevance of this?

STATE: I think it goes to prove his experience with knives and sharp objects and if this—these things were really occurring the way he says, he's got plenty of experience with sharp objects that he probably could have taken it away from [Turner].

DEFENSE: Those in the—this has no probative value whatsoever.

STATE: I mean, this case involves a knife and he's saying that [Turner] had a knife and he was so in fear for his life, but he is constantly as a

5

professional dealing with knives and swords and sharp objects all the time, and I think it goes to his experience with these items and [Turner] has no experience with these items, and he also misrepresented to this jury exactly what he did whenever he was talking about his profession, and this is a huge part of his profession. I think the relevancy of that is he is around these types of things and so therefore his fear that he has–

COURT: This is–

STATE: They are all sharp things, though, Judge. Someone with this experience would not have this fear that he is testifying about.

The State then proceeded to authenticate the photos by eliciting testimony from Karr in which he acknowledged that his work, at least on several occasions, included making and repairing sharp instruments at the request of customers and confirmed that the photos accurately depicted this work. The photos were then admitted over objection from Karr's counsel.

Karr's complaint on appeal is premised on Texas Rule of Evidence 403, which provides that the court may exclude relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403. However, based on the record before us, we cannot conclude that the trial court would have understood that Karr was objecting to the introduction of the evidence on the basis of Rule 403. While Karr clearly objected to the admission of the photographic evidence on the basis of relevancy under Rules 401 and 402, he failed to argue, even in the alternative, that the evidence would be unfairly prejudicial or misleading to the jury. *See id*. R. 401 (test for relevant evidence), R. 402 (irrelevant evidence is not admissible). In addition, we cannot conclude that a Rule 403 objection was apparent from the context. Because Karr's objection on appeal does not comport with the relevancy objection he

6

made in the trial court, we conclude that Karr has not preserved this issue for appeal. *See Clark*, 365 S.W.3d at 339.

In addition, even if Karr had adequately preserved this issue for appeal, we still could not conclude that the trial court's admission of photos, even if in error, would require a reversal of Karr's conviction. Texas Rule of Appellate Procedure 44.2(b) provides that an appellate court must disregard any non-constitutional error that does not affect the criminal defendant's "substantial rights." *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, the appellate court has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict or had but slight effect. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007) (concluding that erroneous admission of photographs was harmless error under rule 44.2(b)); *Campbell v. State*, 382 S.W.3d 545, 553 (Tex. App.—Austin 2012, no pet.).

Having considered the record as a whole in this case, we cannot conclude that the objected-to photos, even if erroneously admitted, had a substantial and injurious effect or influence in determining the jury's verdict.[1]  First, although the photos depict sharp instruments, including

---

[1] In determining whether a criminal defendant's substantial rights have been affected, "[w]e consider all the evidence that was admitted at trial, the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case." *See Sandoval v. State*, 409 S.W.3d 259, 288 (Tex. App.—Austin 2013, no pet.). In addition, we consider the presence of "overwhelming" evidence supporting the finding in question and whether erroneously admitted evidence was cumulative. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002).

knives and axes, the pictures themselves are relatively innocuous in light of the nature of the alleged crime and the other evidence presented, including photos of the crime scene. Moreover, there was no suggestion by the State that Karr had ever used these instruments to hurt or threaten Turner or anyone else, and the State did not mention Karr's profession or the photos during closing arguments.

Second, aside from the photos, there was overwhelming evidence presented to support the jury's finding of guilt. At trial, Dr. Katherine Callahan, the Deputy Medical Examiner for the Travis County Medical Examiner's Office, testified that Turner had sustained 37 wounds, a combination of incised wounds and stab wounds. Callahan's testimony, along with her report which was admitted into evidence, established that Turner had sustained 5 stab wounds in her back torso along with numerous stab wounds in her chest, abdomen, and hand. Dr. Callahan characterized the injuries on Turner's hands and fingers as "defensive wounds," sustained by the victim in defending herself from the weapon. Given the evidence of the injuries sustained by Turner, the testimony presented by Darling and Hammond concerning the events of the night of Turner's death, and the testimony of the various law enforcement officers involved in Karr's apprehension, we conclude that the photos could not have substantially influenced the jury or were only of slight effect. Consequently, any error committed by the trial court in admitting the photos was harmless. *See* Tex. R. App. P. 44.2(b).

## CONCLUSION

For these reasons, we affirm the judgment of conviction.

8

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Bourland

Affirmed

Filed: April 25, 2017

Do Not Publish