

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00162-CR

TONYA RENEE LANE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY
TRIAL COURT NO. 1476532

----------

## MEMORANDUM OPINION[1]

----------

Appellant Tonya Renee Lane appeals from her conviction for the misdemeanor offense of resisting arrest and from the resulting sentence of ninety days' confinement, suspended for two years, with five days' confinement imposed as a condition of community supervision. *See* Tex. Penal Code Ann. § 28.03(a) (West Supp. 2017); Tex. Code Crim. Proc. Ann. arts. 42A.053,

---

[1]*See* Tex. R. App. P. 47.4.

42A.302 (West Supp. 2017).  She argues on appeal that the trial court abused its discretion by allowing a law-enforcement officer to testify that he could tell if someone was being truthful and that Lane's behavior when she was arrested was an act.

On March 16, 2016, Lane appeared before the Pelican Bay Municipal Court to dispute a traffic ticket.  During her appearance, she became irate with the prosecutor, James Donovan—raising her voice, talking over him, and "flailing" her arms.  The bailiff, Officer R. Cross, gave Lane a warning but her behavior continued.  When Cross and another bailiff, Chief Robert Porter, attempted to arrest Lane, she physically resisted.  Lane also was screaming, speaking in tongues, and threatening to harm herself.  The bailiffs eventually restrained Lane and because of her behavior and because she threatened to kill herself, took her to the hospital for a mental-health evaluation.  She was charged with resisting arrest and entered a plea of not guilty, claiming she "broke with reality and became delirious" when Cross and Porter attempted to handcuff her.  At trial, Cross affirmed that he could tell if someone was "playing something up" and testified that Lane's behavior was "an act":

> [Prosecutor:]  How was the demeanor of the defendant in the video [of her transport to the jail after the arrest] compared to how she was acting in the courtroom?
>
> A.     She's actually calmer on the video than she was in the courtroom.
>
>     . . . .

2

. . . When she came in the courtroom, I had her sign in and she signed in when I asked her to and so she was fully aware of what was going on, was responding to questions and directions.

Q.     Okay.  So she was making intentional motions and actions?

A.     Yes.

Q.     Okay.  Did you describe - - after you started to arrest the defendant, did you describe her as delusional?

A.     Her statements sounded delusional, but I don't think that she was delusional.

Q.     And why is that?

A.     I think that she was completely aware of what she was doing based on my interactions with her previously and just prior to that in the courtroom.

          . . . .

Q.     And she was throwing a . . . temper tantrum as a result?

A.     That's what I believed it to be.

          . . . .

Q.     Officer, you had several interactions with the defendant before this date.

A.     Correct.

Q.     And you have a pretty good idea what her normal is?

A.     Correct.

Q.     So whenever you stated to defense counsel and myself that the defendant was acting because you . . . know what she's like, right?

A.     Correct.

3

Q. And so you're able to tell if someone's kind of being truthful or playing something up?

A. Correct.

[Defense counsel]: Objection, Your Honor. I'd like to know where he got his psychiatric degree.

THE COURT: Objection's overruled.

[Defense counsel]: I don't think he's an expert.

THE COURT: Your objection's overruled.

Q. And so how would you describe the defendant that day, then, and what she was doing?

A. It was an act. You know, . . . we come across people all the time that don't want to go to jail, whether . . . they [feign] some sort of mental health crisis so that . . . they're hoping that we just either don't want to deal with it and just let them go or . . . they can go to the hospital instead of going to jail and things like that, so we see it quite often.

Lane asserts that the admission of the "act" and "playing something up" testimony entitles her to a new trial because it affected her substantial rights and, thus, cannot be disregarded. *See* Tex. R. App. P. 44.2(b).

To preserve an issue on appeal arising from the admission of evidence, an appellant must first raise it in the trial court through a timely request, objection, or motion, stating the specific grounds for the desired ruling. Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1); *see Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). Here, Lane failed to object either to the State's question or to the "acting" answer she now argues on appeal was improperly admitted; thus, she has failed to preserve any error for our review. *See* Tex. R. App. P.

4

33.1(a)(1); *Merrick v. State*, Nos. 02-17-00035-CR, 02-17-00036-CR, 2018 WL 651375, at *12 (Tex. App.—Fort Worth Feb. 1, 2018, no pet. h.). Similarly, Lane's qualification objection to the State's question asking if Cross could tell if someone was "being truthful or playing something up," which ostensibly arose under rule 702, was not raised until after Cross answered the question. And Lane did not object when Cross earlier testified that she was "completely aware" of what she was doing. Lane's objection was untimely and she proffers no legitimate reason for the delay; thus, any objection to this portion of Cross's testimony was likewise forfeited. *See Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995); *see also Cortez v. State*, No. 2-05-147-CR, 2006 WL 1563275, at *8 (Tex. App.—Fort Worth June 8, 2006, pet. ref'd) (mem. op., not designated for publication) (holding objection to testimony not preserved for appellate review because Appellant waited to object until after officer answered objectionable question). We overrule Lane's issue and affirm the trial court's judgment.[2] *See* Tex. R. App. P. 43.2(a).

---

[2]Even if Lane had preserved this issue for our review, we would be constrained to hold that any possible error must be disregarded because the same or similar evidence that Lane was acting when she resisted arrest was admitted elsewhere without objection through Cross's earlier testimony and through the later testimony of Donovan and Porter. *See* Tex. R. App. P. 44.2(b); *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Pickron v. State*, 515 S.W.3d 462, 466–67 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). And Cross, as a lay witness, could testify in order to aid the jury in reaching a clear understanding of his testimony or in determining a fact in issue, including Lane's culpable mental state. *See* Tex. R. Evid. 701; *Fairow v. State*, 943 S.W.2d 895,

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 5, 2018

---

898-99 (Tex. Crim. App. 1997) (collecting and discussing cases under rule 701, including *Doyle v. State*, 875 S.W.2d 21, 23 (Tex. App.—Tyler 1994, no pet.)).