**Opinion issued May 12, 2026.**



**In the**

**Court of Appeals**

**for the**

**First District of Texas**

————————————

**NO. 01-23-00717-CR**

————————————

**ALEXANDER J. KLEIN, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1682713**

**MEMORANDUM OPINION**

Alexander J. Klein was indicted for the offense of capital murder. *See* TEX. PENAL CODE § 19.03. Appellant pled guilty to the lesser charge of murder and was sentenced to life with parole. Appellant argues on appeal that the trial court (1) erred in failing to enter findings of fact and conclusions of law following its

denial of appellant's motion to suppress his custodial statement and (2) abused its discretion in denying appellant's motion to suppress.

We affirm the trial court's judgment. Appellant concedes that his first issue has been mooted by the trial court's issuance of findings of fact and conclusions of law after appellant filed his appellate brief. Further, we conclude that the trial court did not abuse its discretion in determining that appellant's waiver of his rights and custodial statement were knowing and voluntary and, on that basis, denying appellant's motion to suppress.

## Background

On July 17, 2020, police took appellant into custody in connection with the April 14, 2020 murder of Jonathan Carmona. Later that day, appellant gave a videotaped custodial statement. Appellant was 19 years old at the time.

On October 7, 2020, appellant was indicted in Harris County for the capital murder of Carmona. The indictment alleged that appellant "did then and there unlawfully, while in the course of committing and attempting to commit the robbery of Jonathan Carmona, intentionally cause the death of Jonathan Carmona by shooting Jonathan Carmona with a deadly weapon, namely a firearm."

On September 28, 2023, appellant moved to suppress his custodial statement, claiming that appellant did not make the statement freely and voluntarily. At an October 3, 2023 hearing, the trial court denied the motion. At the

2

same hearing, immediately following the denial of his motion to suppress, appellant pled guilty to the first-degree felony offense of murder, and the trial court sentenced him to life in prison. The trial court certified his right to appeal the denial of his motion to suppress, and appellant timely filed his notice of appeal.

## Custodial Statement

In his second point of error, appellant argues that the trial court abused its discretion in denying appellant's motion to suppress his April 17, 2020 custodial statement. Appellant claims that he did not make the statement freely and voluntarily because, at the time he waived his rights and gave the statement, he was under the "amnesia-inducing" influence of approximately 3 milligrams of Xanax and 60 milligrams of Adderall that he had ingested before being taken into custody. Appellant asserts that, during his police interview, the Xanax and Adderall "rendered him in a 'blacked out' state of mind." More specifically, he claims that "the Xanax made him black out and the Adderall, which helps with focus, made him look 'sharp,' or coherent." Appellant asserts that he has no memory of any part of his police interview, including being read his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), or waiving those rights.[1]

---

[1] Appellant argues on appeal that his age at the time he was taken into custody should also be taken into consideration in assessing the voluntariness of his confession, which he argues we must assess under the totality of the circumstances. However, while appellant testified to his age at the hearing on his motion to suppress, nothing in appellant's written motion or his arguments at the

3

## A. Standard of Review and Applicable Law

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Ferguson v. State*, No. 01-23-00557-CR, 2025 WL 1298259, at *7 (Tex. App.—Houston [1st Dist.] May 6, 2025, pet. ref'd) (mem. op., not designated for publication) (citing *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013)). We review the trial court's factual findings for an abuse of discretion and review de novo its application of the law to the facts. *Id*. (citing *Turrubiate*, 399 S.W.3d at 150). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witness's credibility and may choose to believe or disbelieve all or any part of the witness's testimony. *Id.* (citing *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)). If the trial court makes express findings of fact, we review the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports the fact

hearing would have placed the trial court on notice that appellant was challenging the voluntariness of his waiver or statement based on his age. *See Douds v. State*, 472 S.W.3d 670, 674-77 (Tex. Crim. App. 2015) (holding that appellant failed to preserve error with respect to factual grounds for suppression where appellant made only isolated references to those grounds in suppression proceedings in trial court; appellant's motion, arguments, and evidence were otherwise narrowly focused on other factual grounds; and trial court thus was not placed on notice of complaint). Indeed, the trial court noted in its findings of fact and conclusions of law that: "While [appellant's] written motion [to suppress] is general, at the hearing [appellant] indicated that [he was] alleging a sole ground for relief - his waiver of rights was not knowing due to voluntary intoxication after taking 3mg of Xanax and 60mg of Adderall."

4

findings. *Id.* (citing *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010)).

We review the trial court's legal ruling de novo unless its explicit findings that are supported by the record are also dispositive of the legal ruling. *Id.* (citing *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* (citing *Valtierra*, 310 S.W.3d at 447-48).

"The Fifth Amendment privilege against self-incrimination prohibits the government from compelling a criminal suspect to bear witness against himself." *Acosta v. State*, No. AP-77,092, 2024 WL 2845498, at *12 (Tex. Crim. App. June 5, 2024) (per curiam) (not designated for publication) (citing U.S. CONST. amend. V), *cert. denied*, 145 S. Ct. 779 (2024). The right against self-incrimination is satisfied only when a defendant's statements are given voluntarily. *Id.*; *Lopez v. State*, 610 S.W.3d 487, 494 (Tex. Crim. App. 2020) (observing that defendant's statement or confession must be voluntary to be admissible); *see also* TEX. CODE CRIM. PROC. art. 38.21 ("A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed.").

A defendant may claim that his statement was involuntary, and is therefore inadmissible, under one or more of three different theories: (1) the statement was

involuntary under section 6 of article 38.22 of the Texas Code of Criminal Procedure, (2) the taking of the statement did not comply with the dictates of *Miranda* and sections 2 and 3 of article 38.22 of the Texas Code of Criminal Procedure, or (3) the statement was made in violation of the Due Process Clause because it was not freely made. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008); *Ferguson*, 2025 WL 1298259, at \*7. Federal constitutional claims of involuntariness "involve an objective assessment of police behavior"; the Constitution "leaves voluntariness claims based on the defendant's state of mind 'to be resolved by state laws governing the admission of evidence.'" *Oursbourn*, 259 S.W.3d at 171 (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)). In Texas, the relevant state law is article 38.22 of the Texas Code of Criminal Procedure. *Id.*

A confession given under the duress of medications, or because the suspect did not know what he was signing due to intoxication, could be involuntary under articles 38.21 and 38.22. *Id.* at 172-73. However, "youth, intoxication, mental retardation, and other disabilities are usually not enough, by themselves, to render a statement inadmissible" under article 38.22, and are instead "factors that a jury, armed with a proper instruction, is entitled to consider." *Id.* at 173.

**B.     Analysis**

Here, appellant pled guilty to the lesser charge of murder, and the trial court sentenced him to life with parole, immediately following the trial court's hearing on and denial of appellant's motion to suppress his custodial statement.

Appellant testified at the suppression hearing that he had ingested approximately 3 milligrams of Xanax and 60 milligrams of Adderall before being detained by officers. He said the drugs "hit [his] system" after he was taken into custody and being driven to the Houston Police Department (HPD) headquarters, after which "everything kind of went out." The next thing appellant remembered was waking up the next morning. Appellant stated he had no recollection of the events in between, including his interview with police and confession. Appellant testified that Xanax causes him to "black out," and that he was blacked out during his waiver of his rights and custodial statement. He acknowledged that, in his videotaped custodial statement, he was "awake and talking to the police officer." But he attributed that to the Adderall. He said that the Adderall "may have helped me to be sharp," but that he did not remember because "Xanax makes me black out."

At the suppression hearing, HPD Sergeant Lance Osborn testified that he had obtained a "pocket warrant" for appellant's arrest, which he executed on July 17, 2020. Sergeant Osborn, accompanied by Officer Andrew Henderson,

interviewed appellant at the HPD headquarters in downtown Houston. According to Sergeant Osborn, after he read appellant his *Miranda* rights, appellant waived his rights and consented to speak to the officers. Sergeant Osborn testified that, during the approximately 90-minute interview, appellant made a confession to the officers that was "consistent with both the physical evidence and the witnesses." Sergeant Osborn and Officer Henderson both testified that they observed no sign that appellant was impaired during his interview.[2]

In its findings of fact and conclusions of law, the trial court noted that, at the suppression hearing, appellant alleged that "his waiver of rights was not knowing due to voluntary intoxication after taking 3mg of Xanax and 60mg of Adderall." At the hearing, the trial court watched an audio/video recording of Sergeant Osborn's interview of appellant, including the "the warnings provided, [appellant's]

---

[2] Klein argues that Sergeant Osborn "admitted that assessment of intoxication on a combination like Xanax and Adderall is not necessarily obvious to the naked eye"; and that, "while Xanax, like alcohol is a central nervous system depressant, and while it can present like alcohol, unlike alcohol, the Xanax/Adderall combination is not detectable by simple means such as smell." Sergeant Osborn testified that, unlike alcohol use, Xanax or Adderall use could not be determined by smell. But when asked if slurred speech is something he would normally associate with someone who might be under the influence of Xanax or Adderall, he responded, "[y]es, sir." When asked if, absent other physical evidence of Xanax or Adderall use, "you would agree with me that that is something that would have to be confirmed or eliminated, if you will, as a possibility by way of chemical testing," Sergeant Osborn responded: "To the degree of beyond a reasonable doubt, certainly. To the degree of many other standards, I would disagree with you."

waiver(s), [appellant's] statements, and [appellant's] actions and demeanor throughout the statement."

In its findings of fact and conclusions of law, the trial court found that appellant was "read his Texas Statutory Warnings under the Texas Constitution and *Miranda v Arizona* by the interviewing officer, Officer Lance Osborn." After each of the warnings, "Officer Osborne asked [appellant] if he understood and [appellant] verbally acknowledged that he understood the warnings." Appellant "made an unequivocal statement that he understood the warnings and agreed to waive them and talk to Officer Osborn." Appellant "did not inform law enforcement of any intoxication at the time of the interview and did not tell officers he had ingested any intoxicating or controlled substances." In addition, "[d]uring the interview, [appellant] had clear speech and was able to make clear and lengthy statements which followed a linear storytelling path." Based on the trial court's own observation and Sergeant Osborn's testimony, the trial court found further that appellant "stood for minutes at a time while viewing photographs and was able to stand without swaying or stumbling." Appellant "appeared alert and engaged" and "showed no outward signs of a lack of the normal use of his mental or physical faculties."

The trial court thus found that appellant's "claim that he was intoxicated to the point of not being able to make a knowing waiver of his rights and give a

9

voluntary statement is not credible." The trial court found further that the testimony of Sergeant Osborn and Officer Henderson was credible. The trial court found, and also made the legal conclusion, that appellant's "waiver of his Texas Statutory Warnings and Miranda Rights was knowing and voluntary."

At the suppression hearing, the trial court was the sole judge of appellant's credibility and could choose to believe or disbelieve any or all of his testimony. *See Ferguson*, 2025 WL 1298259, at *7 (citing *Maxwell*, 73 S.W.3d at 281). We conclude that the evidence, viewed in the light most favorable to the trial court's findings, reasonably supports the trial court's ruling.[3] We thus overrule appellant's second point of error. *See id.* (citing *Valtierra*, 310 S.W.3d at 447-48).

---

[3] The trial court also stated as part of its legal conclusions that appellant had "fail[ed] to show that he was in-fact under the influence of any controlled substance and that if he in-fact was, that it prevented him from making an informed and independent choice when he waived his statutory rights." Appellant argues for the first time in his reply brief that this statement indicates that the trial court impermissibly shifted the burden of proof to the accused. *See Zoanni v. Hogan*, 715 S.W.3d 47, 97 n.30 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) ("[A] party may not present arguments for the first time in its reply brief." (quoting *Cebcor Serv. Corp. v. Landscape Design & Constr., Inc.*, 270 S.W.3d 328, 334 (Tex. App.—Dallas 2008, no pet.))); *see also Chambers v. State*, 580 S.W.3d 149, 161 (Tex. Crim. App. 2019) (noting that, while appellant generally may not raise new issue in reply brief, courts of appeals can consider arguments and authorities in reply brief that are related to arguments in original brief). Once a defendant establishes that the setting is one of custodial interrogation, the State has the burden to establish that *Miranda* warnings were given and that the defendant voluntarily waived those rights and voluntarily responded to custodial questioning. *Herrera v. State*, 241 S.W.3d 520, 534 (Tex. Crim. App. 2007) (Cochran, J., concurring). However, even if we were to conclude that appellant's argument relates to arguments in his original brief, the trial-court language on which appellant relies comes after its findings that appellant's involuntariness claims

## Conclusion

We affirm the trial court's judgment.

Amparo "Amy" Guerra
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).

---

were not credible, that the officers' testimony was credible, and that appellant's waiver was knowing and voluntary, which findings were reasonably supported by the evidence viewed in the light most favorable to the findings and thus supported the trial court's denial of appellant's motion to suppress.