

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-16-00125-CR

NELSON EDWARD DUSENBERY                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
### TRIAL COURT NO. CR13291

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted pro se Appellant Nelson Edward Dusenbery of continuous sexual abuse of a child under fourteen years of age and assessed his punishment at life imprisonment. The trial court sentenced him accordingly. In seven issues, Appellant complains that:

- The evidence is insufficient to support his conviction (Issue 7);

---

[1]*See* Tex. R. App. P. 47.4.

- He was incompetent to stand trial (Issue 1);

- The complainant did not take the oath to tell the truth before testifying (Issue 2);

- The venire panel and jury were "tainted with biased and prejudiced jurors" (Issue 4);

- The prosecutor committed misconduct (Issue 5);

- His trial counsel (Trial Counsel) was ineffective (Issue 3); and

- The trial court was biased, resulting in an unfair trial (Issue 6).[2]

Because we hold that the evidence sufficiently supports Appellant's conviction, that the trial court did not abuse its discretion by not inquiring into his competency to stand trial, that Appellant failed to satisfy his burden of proving ineffective assistance of Trial Counsel, that the record does not reveal judicial bias, and that Appellant forfeited his remaining issues, we affirm the trial court's judgment.

## I. BRIEF SUMMARY OF FACTS

Although not related to them, Appellant was left in charge of minor sisters Lean09,[3] the complainant, and L.D. (the girls) after his girlfriend (and their mother) was arrested and ultimately convicted and sentenced to prison for an

---

[2]While Appellant's briefed issues overlap, our discussion of them does not. When we overrule an issue, that resolution disposes of all his arguments concerning the substance of that issue, regardless of where those arguments appear in his brief.

[3]We use the pseudonym for the complainant that the State used in its indictment.

out-of-state murder.  At the time of their mother's arrest, Lean09 was nine years old, and L.D. was thirteen years old.  The girls lived with Appellant in Tarrant County and then Hood County.

When Lean09 was a teenager, she told L.D. that Appellant had sexually abused her.  The girls confronted him together and warned that they would report him if it happened again.  Soon after that conversation, when L.D. was seventeen years old, she moved out of the Hood County home to live with her boyfriend near Beaumont, and the sexual abuse "got worse" for Lean09.  At the end of July 2015, Appellant tried to get Lean09 to have sexual intercourse with him again. She refused, punched him, and called L.D. to come get her.  A few days after Lean09 left Hood County with L.D., the girls reported Appellant's sexual abuse to Hood County law enforcement, who directed Lean09 to call Appellant and then recorded the telephone conversation between Appellant and Lean09 with the girls' consent (recorded phone call).

Lean09 also had a complete examination at Cook Children's Hospital and a forensic interview at the Children's Advocacy Center.

Hood County law enforcement arrested Appellant the day after the recorded phone call, and the grand jury ultimately indicted him on charges of continuous sexual abuse of a child and several related counts.[4]  After hearing

---

[4]After Appellant's conviction and sentence, those other counts were dismissed.

3

testimony from the girls, the Hood County investigator in charge of the case, the nurse who examined Lean09 at the hospital, and Appellant, and after listening to the recorded phone call and hearing about emails Appellant sent Lean09, the jury found him guilty of continuous sexual abuse of a child.

## II.    SUFFICIENCY OF THE EVIDENCE

In his seventh issue, Appellant contends that the evidence was insufficient to support his conviction, but he focuses on the conflicts in the evidence, its circumstantial nature, and its alleged inadmissibility.  The count in the indictment alleging continuous sexual abuse of a child under fourteen years old charged:

> [D]uring a period that was more than 30 days in duration, to wit: from on or about November 19, 2008, through November 18, 2014, when [Appellant] was 17 years of age or older, [he] did then and there commit two or more acts of sexual abuse against [a child] younger than 14 years of age, namely:
>
> Aggravated Sexual Assault, by intentionally or knowingly causing the female sexual organ of "Lean09" (pseudonym), a child who was then younger than 14 years of age who was not [his] spouse . . . [,] to contact [his] penis;
>
> Aggravated Sexual Assault, by intentionally or knowingly causing the anus of "Lean09" (pseudonym), a child who was then younger than 14 years of age who was not [his] spouse . . . [,] to contact [his] penis;
>
> Aggravated Sexual Assault, by intentionally or knowingly causing the mouth of "Lean09" (pseudonym), a child who was then younger than 14 years of age who was not [his] spouse[,] to contact [his] penis;
>
> Indecency With a Child, by intentionally, with the intent to arouse or gratify [his] sexual desire . . . , engage in sexual contact by touching the female sexual organ of "Lean09" (pseudonym), a child who was then younger than 14 years and not [his] spouse . . . , with [his] hand; [and/or]

4

Indecency With a Child, by intentionally, with the intent to arouse or gratify [his] sexual desire . . . , engage in sexual contact by causing "Lean09" (pseudonym), a child who was then younger than 14 years and not [his] spouse, to touch [his] penis with her hand[.]

## A. We Consider All Evidence—Direct, Circumstantial, Properly Admitted, and Improperly Admitted—When Assessing Its Sufficiency to Support a Conviction.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all the evidence, even improperly admitted evidence, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004). This standard gives full play to the trier of fact's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the

5

cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

**B.  A Defendant May Be Convicted of Continuous Sexual Abuse of a Child if He Commits Two Acts of Sexual Abuse in a Period of Thirty or More Days, and the Jurors Do Not Have to Agree on Which Two Acts He Committed or on When He Committed Them Within that Period.**

Section 21.02 of the Texas Penal Code provides in relevant part,

(b)  A person commits an offense if:

    (1)  during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

    (2)  at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age . . . .

(c)  For purposes of this section, "act of sexual abuse" means any act that is a violation of one or more of the following penal laws:

    . . .

    (2)  indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child;

    (3)  sexual assault under Section 22.011; [or]

    (4)  aggravated sexual assault under Section 22.021[.]

    . . .

(d)  If a jury is the trier of fact, members of the jury are not required

6

to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

Tex. Penal Code Ann. § 21.02(b)–(d) (West Supp. 2017).

A complainant's uncorroborated testimony of sexual abuse suffered as a child, standing alone, can support a conviction. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (West Supp. 2017); *Lawson v. State*, No. 02-15-00090-CR, 2016 WL 4699196, at *6 (Tex. App.—Fort Worth Sept. 8, 2016, no pet.) (mem. op., not designated for publication); *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd).

## C. Lean09 Testified About Several Acts of Sexual Abuse Committed by Appellant over a Multiyear Period Before She Turned Fourteen Years Old.

After the girls' mother's arrest, Appellant and the girls initially lived in the Fort Worth home on Alta Mesa Drive that they had shared with her. They then moved to two successive homes in Hood County. Lean09 testified that various acts of sexual abuse occurred in each home. She stated:

- The first incident happened when Lean09 was nine years old and in the living room of the home on Alta Mesa. Appellant exposed himself and told her to feel his penis, and she complied;

- That same conduct occurred a few more times in that living room and in his bedroom;

- Appellant and the girls moved to a rent house in Granbury when Lean09 was around ten or eleven years old and stayed about a year;

- The "[s]ame kind of things" happened in Appellant's bedroom in that

7

house—Lean09 touched his penis with her hand, Appellant touched her chest, and he touched her genitals with his hand and with his penis;

- The first time Appellant touched Lean09's genitals with his hand, she was wearing pajamas, and he told her that he was "[j]ust getting a feel for [her]";

- The first time Appellant touched Lean09's genitals with his penis, he said nothing, and she wore nothing. He put her on his bed with her back to him, and he put his penis "inside [her]" vagina. "[H]e kept going until he stopped and told [her she] could leave";

- When Lean09 was "11ish," Appellant and the girls moved to another house in Granbury, and the sexual abuse continued;

- Appellant "made [Lean09] give him oral sex at that house" "[q]uite a few" times, and semen would come out of his penis and go on the bed, on the floor, and a few times, on her;

- Appellant would call Lean09 "[B]eloved, beautiful, [and] other things like that," which made her feel "[a]wkward";

- Regarding his conduct, Appellant "told [Lean09] that that's what God wanted and that's what God told him to do," and if she refused him, "God would put a curse on [her] and strike [her] down";

- The fifteen-year-old Lean09 testifying at trial no longer believed God wanted Appellant to sexually abuse her and wanted her to submit to Appellant, but the "11ish" child had believed it;

- The sexual abuse did not happen every day or even every week;

- During this time, Lean09 and L.D. were taken by social workers to another state to testify in their mother's case; they were kept in a foster home;

- Despite having opportunities, Lean09 did not tell anyone in the other state what Appellant was doing because she was afraid she would be separated from L.D.;

- Similarly, Lean09 did not tell CPS workers who visited her Granbury home about the sexual abuse;

- The sexual abuse continued when the girls returned to Granbury

8

after their mother's trial;

- When she was a teenager, Lean09 told L.D. that Appellant "had [her] touch him, and he touched [her]";

- L.D. confronted Appellant the next day, which helped "[a] little bit"; the sexual abuse "slowed down [and] barely happened until [L.D.] moved out";

- After L.D. moved out, "[t]he sexual abuse started up again";

- Appellant smoked marihuana fairly often and also baked it and put it in pills which he gave Lean09, who could not smoke because of her health;

- Appellant also gave Lean09 alcohol;

- When Appellant caused his penis to contact Lean09's genitals, caused her mouth to contact his penis, touched her genitals with his hand, and had her touch his penis, she was under fourteen years old, and those events occurred over a time period greater than thirty days.

**D. The State's Other Witnesses and the Recorded Phone Call Supported the Premise that Appellant Had Sexually Abused Lean09.**

L.D. testified:

- She was nineteen years old at the time of Appellant's trial, and Lean09 was fifteen;

- After their mother's arrest, Appellant homeschooled the girls but not well;

- Appellant never dated women his own age after their mother left;

- Appellant had marihuana in the house and often pressured her to get it for him;

- When L.D. confronted Appellant about sexually abusing Lean09, "[h]e said he understood why [L.D.] was confronting him, . . . that . . . he respected it[,] and he wouldn't do it . . . again";

- Appellant never sexually abused L.D.;

9

- L.D. never witnessed the sexual abuse but did notice that Appellant "liked [Lean09] to sleep on th[e] couch [in his bedroom] or in his bed with . . . him";

- L.D. never told CPS about Appellant sexually abusing Lean09 because she did not want to be separated from her sister; and

- L.D. moved out in 2013 when she was seventeen years old.

Theresa Fugate, the Cook Children's Hospital nurse who performed Lean09's sexual assault exam, read her notes of the medical history Lean09 provided,

> Smart, pretty 15-year-old girl, who is made aware that she's here for a medical checkup, for a medical diagnosis and treatment. When asked why she was here today, [Lean09] stated, "Because of what my stepdad did." And I asked, "What did he do?" She said, "It started about four or five months after my mom went to jail in 2009. It started with just usual stuff, like showing me hisself naked and some touching. When I was around ten years old, he would have me touch him and rub him." Then I asked her, "Did anything ever come out of his penis?" She said, "Yes, it went on him or me, I don't remember. When I was 12 years old or 13 years old, he had sex with me, but only once, and he tried anally, but it didn't work." And I asked, "When was the last time he did anything?" "The last time he actually did anything, which was touching, was the late summer of 2014. He tried to touch me July 30th of this year [(2015)]. He started trying to talk me into it, then he grabbed me, but I punched him."

> . . . .

> "Then we went in his room, and the next day I think I called my sister, and she came to get me." And I asked her, "Did he ever give you any alcohol or drugs?" "Yes, I think when I was 14 years old, he gave me marijuana, not to smoke, he made them into pills, and he would give me alcohol starting around 13 years old."

In answering Fugate's "Specific Act Questions," Lean09 indicated that there was vaginal contact by penis and hand, penile-anal contact, oral copulation

10

of Appellant by her, masturbation or contact of Appellant by her and of her by him, ejaculation, fondling, licking, and alcohol or drug use.

In the recorded phone call, Appellant had several opportunities to deny that he had sexually abused Lean09, but he did not make any denials. Instead, he repeatedly stated that he was sorry and that he had not meant to hurt her. The recorded phone call also included the following content:

- Appellant admitted that he "said and did some things [he] shouldn't have";

- Appellant told Lean09 he would "do whatever it takes to keep [their] relationship good";

- In response to her question, "Why did you touch me when you did and do those things?" Appellant replied, "I'm sorry. I let myself fall in love with you. I'm sorry for hurting you. It wasn't my intention";

- In response to her statement that she "didn't want [him] to touch [her] that way," Appellant replied, "I know";

- To Lean09's statements, "We can't have sex anymore" and "We can't do that anymore," Appellant replied, "I understand" and "Alright";

- In response to her question whether God had said it was okay for Appellant to have sex with her, he said that "[he] believe[d he] was in God's will," but he later admitted that God did not want him to fondle her; he had drunk too much and was weak.

Hood County District Attorney's Office Investigator Robert Young testified that:

- He listened in on the recorded phone call as he was recording it with the girls' consent;

- Within an hour or so of that call, he called the same number Lean09 had called and recognized Appellant's voice when he answered;

11

- Investigator Young advised Appellant to come talk to him;

- Investigator Young arrested Appellant pursuant to a warrant the day after the recorded phone call; and

- Investigator Young searched the home the following day, finding gas cans containing gas, matches, a lighter, a suicide note, marihuana, and assorted paraphernalia.

**E.    In His Testimony, Appellant Admitted to Touching Lean09's Crotch on Two Separate Occasions, Months Apart, When She Was Younger Than Fourteen Years Old.**

In his testimony in the defense's case in chief, Appellant claimed that the reception had been poor on the recorded phone call, and he had not always heard everything Lean09 had said during it.  He denied having sex with Lean09, making her touch him, and being intoxicated while appearing at trial.  He also denied that she had punched him.  He admitted, however, that he had touched her crotch on two separate occasions months apart but near the time of her mother's trial.  He insisted that he had been intoxicated and "[t]here was nothing sexual about it[,]" but he also admitted that touching Lean09 between her legs was not God's will.  Conversely, he further testified that he had never touched Lean09 improperly or had sex with her.  He tried to justify his recorded comments about falling in love with her by stating that he had fallen in love with her mother and her sister as well and was committed to them as his family.

**F.    The Evidence is Sufficient to Support Appellant's Conviction.**

Appellant's focus in his sufficiency issue on the conflicts in the evidence, Trial Counsel's alleged deficiencies, and the alleged inadmissibility of the evidence is misplaced.  The jury, not this court, is the sole arbiter of the weight

and credibility of the evidence, *see* Tex. Code Crim. Proc. Ann. art. 38.04; *Blea*, 483 S.W.3d at 33, and when we measure the sufficiency of the evidence, we consider all of it, even those items improperly admitted, *Moff*, 131 S.W.3d at 489–90.

Viewing the evidence in the light most favorable to the verdict, we conclude that it sufficiently supports Appellant's conviction. In fact, Lean09's testimony alone supports the verdict:

- Lean09 first touched Appellant's penis at his direction when she was nine years old, and that type of sexual conduct occurred "a few more times" in the Fort Worth house;[5]

- When Lean09 was ten or eleven years old and Appellant and the girls had moved to Granbury, that same conduct again occurred, and Appellant also touched her genitals with his hand and with his penis and penetrated her vaginally with his penis once;

- At the second Granbury home, Appellant forced Lean09 to "give him oral sex" "[q]uite a few" times; and

---

[5]Article 13.075 of the Texas Code of Criminal Procedure, effective September 1, 2011 (after the sexual abuse alleged here began in Tarrant County), now provides that an offense such as continuous sexual abuse may be prosecuted in a county in which an element was committed, the defendant was arrested, the defendant lives, or the complainant lives. Tex. Code Crim. Proc. Ann. art. 13.075 (West 2015). When Appellant's sexual abuse of Lean09 began, the offense could be prosecuted in any county where the offense was committed. *See id.* art. 13.18; *Meraz v. State*, 415 S.W.3d 502, 505–06 (Tex. App.—San Antonio 2013, pet. ref'd) (relying on *State v. Weaver*, 982 S.W.2d 892, 893– 94 (Tex. Crim. App. 1998), *cert. denied*, 528 U.S. 830 (1999)). The jury charge tracked the law in effect by providing, "You are instructed that when an offense may be prosecuted in either of two or more counties, the indictment may allege the offense to have been committed in the county where the same is prosecuted, or in any county or place where the offense was actually committed."

13

- All of the sexual acts Appellant committed or caused—involving his penis on her genitals, her mouth on his penis, his hand on her genitals, and her hand on his penis—occurred when she was younger than fourteen years old and over a period of time that exceeded thirty days.

The statute requires only two acts of sexual abuse. *See* Tex. Penal Code Ann. § 21.02(b)–(d).[6]

Ignoring any discrepancies or conflicts, which were within the jury's exclusive power to resolve, *see* Tex. Code Crim. Proc. Ann. art. 38.04; *Blea*, 483 S.W.3d at 33, the other testimony and evidence also support the conviction. *First*, L.D.'s testimony confirms (1) Appellant as the perpetrator based on Lean09's outcry to L.D. and (2) that the sexual abuse occurred before Lean09's fourteenth birthday. *Second*, Nurse Fugate's testimony corroborates Lean09's testimony about the multiple acts of sexual abuse Appellant committed and about when the sexual abuse began and ended; Nurse Fugate's testimony also supports the paragraph in the indictment alleging penile-anal contact. *Third*, the recorded phone call indirectly supports Lean09's allegations because Appellant apologized repeatedly, talked about falling in love with her, and did not deny sexual misconduct when she discussed the topic. *Fourth*, Appellant's own testimony supports the conviction because he admitted "touch[ing] her crotch on . . . two occasions" when he was intoxicated, and the jury could have properly

---

[6]Appellant does not contest the fact that he was an adult when he met the girls. *See* Tex. Penal Code Ann. § 21.02(b)(2).

14

rejected his claim that he had no sexual intent. *See Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984) ("The trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any witness'[s] testimony.").

Accordingly, based on the proper standard of review, we hold that the evidence is sufficient to support Appellant's conviction. We overrule his seventh issue.

### III.    COMPETENCY TO STAND TRIAL

In his first issue, Appellant contends that the trial court erred by failing to sua sponte hold a competency hearing. "A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." Tex. Code Crim. Proc. Ann. art. 46B.003(b) (West 2018). The Texas Court of Criminal Appeals recently reviewed how competency issues in criminal cases are triggered and then determined by our trial courts:

> As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial. The Legislature has codified this due-process requirement by setting forth a substantive and procedural framework for making competency determinations to ensure that legally incompetent criminal defendants do not stand trial. *See* Tex. Code Crim. Proc. arts. 46B.003, 46B.004, 46B.005 [West 2018]. Substantively, incompetency to stand trial is shown if the defendant does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." *Id.* art. 46B.003(a). Procedurally, a trial court employs two steps for making competency determinations before it may ultimately conclude that a

15

defendant is incompetent to stand trial. The first step is an informal inquiry; the second step is a formal competency trial.

*Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) (selected citation omitted). We liberally construe Appellant's issue to complain that the trial court failed to conduct both steps—an informal inquiry and a formal competency trial. *See id.* at 564.

**A.   We Review a Trial Court's Failure to Sua Sponte Informally Inquire into a Defendant's Competency to Stand Trial for an Abuse of Discretion.**

We review a trial court's failure to conduct an informal inquiry into a criminal defendant's competency to stand trial for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as stated in Turner v. State*, 422 S.W.3d 676, 692 & n.31 (Tex. Crim. App. 2013); *Tucker v. State*, No. 05-16-00297-CR, 2017 WL 1282897, at *4 (Tex. App.—Dallas Apr. 6, 2017, no pet.) (mem. op., not designated for publication); *Demarsh v. State*, No. 02-15-00210-CR, 2016 WL 1267702, at *4 (Tex. App.—Fort Worth Mar. 31, 2016, no pet.) (mem. op., not designated for publication). A trial court does not abuse its discretion absent a showing that its decision was arbitrary or unreasonable. *Montoya*, 291 S.W.3d at 426; *Phillips v. State*, No. 05-16-00850-CR, 2017 WL 2875522, at *1 (Tex. App.—Dallas July 6, 2017, no pet.) (mem. op., not designated for publication).

**B.** **Any Credible Evidence Triggers the Trial Court's Sua Sponte Duty to Informally Inquire into a Defendant's Competency to Stand Trial.**

"An informal inquiry is called for upon a 'suggestion' from any credible source that the defendant may be incompetent." *Boyett*, 545 S.W.3d at 563 (citing Tex. Code Crim. Proc. Ann. art. 46B.004(a), (c), (c-1)). When "evidence suggesting" that a defendant in a criminal case "may be incompetent to stand trial comes to the attention of the [trial] court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." Tex. Code Crim. Proc. Ann. art. 46B.004(b); *Demarsh*, 2016 WL 1267702, at *4. "Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant is incompetent." Tex. Code Crim. Proc. Ann. art. 46B.004(c-1); *Tucker*, 2017 WL 1282897, at *4. The article 46B.024 factors are:

(1) the capacity of the defendant during criminal proceedings to:

(A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;

(B) disclose to counsel pertinent facts, events, and states of mind;

(C) engage in a reasoned choice of legal strategies and options;

(D) understand the adversarial nature of criminal proceedings;

(E) exhibit appropriate courtroom behavior; and

(F) testify;

17

(2)    as supported by current indications and the defendant's personal history, whether the defendant:

    (A)    is a person with mental illness; or

    (B)    is a person with an intellectual disability;

(3)    whether the identified condition has lasted or is expected to last continuously for at least one year;

(4)    the degree of impairment resulting from the mental illness or intellectual disability, if existent, and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner; and

(5)    if the defendant is taking psychoactive or other medication:

    (A)    whether the medication is necessary to maintain the defendant's competency; and

    (B)    the effect, if any, of the medication on the defendant's appearance, demeanor, or ability to participate in the proceedings.

Tex. Code Crim. Proc. Ann. art. 46B.024 (West 2018).

## C.    Appellant Relies on Evidence of His Alleged Mental State Months Before Trial.

Appellant relies on his alleged pedophilia related to the offenses with which he was charged, his mental state during the short period after Lean09 left the home through the time of his arrest, and the State's use of evidence of his mental state at a pretrial bond hearing.

After Lean09 left the home she shared with him, Appellant sent her a series of emails. In one dated August 6, 2015, he stated, "Hello my love, I'm sorry I locked you out of your bank account. I was very hurt and angry when you ran away from home. Then pretty much deep dark depression after that." In an email sent on August 17, 2015—the day of the recorded phone call but after both

18

it and Investigator Young's call to Appellant, the subject line read, "Life and death situation." In another email sent late that night, Appellant wrote to Lean09, "Why have you betrayed God, yourself, me, [and all the pets,] and condemned us all to death from your curse, it is not right!"

Investigator Young arrested Appellant on August 18, 2015, the day after both the recorded phone call and the call between the two men, and searched the home the following day. Investigator Young found inside the house several gas cans containing gas, matches, a lighter, and an undated, typed suicide note addressed to Lean09 and signed by Appellant. The note provided,

> I am sorry that the day you left me I got angry at first then I became hurt that you left me, then I sank into a deep depression by Saturday morning. I then became overwhelmed with deep depression, deeper then I have ever felt before. I was consumed with thoughts of suicide. I fought them off for many days until God took them from me in an instant. I fought them off over the last two weeks but yesterday when the investigator for the DA's office called after you called me for closer [sic], all of the work I put in to stay alive went out the door. I had hope for a future where you would come back home and I could care for you again. Unfortunately you turned out to be just like all of the other women in my life, you just wanted to hurt me and use me then dump me like trash at the end, so I cannot live a life where I am just garbage to be tossed away by all of the people that I have loved for my whole life. I am done with life and you can know that you are responsible for my death and the death[s] of [the pets], our blood is on your hands and your soul. . . . You should bare [sic] all of the burden for my death. . . . I offered myself up to you and you rejected me, so here is the consequence of your actions. . . . I am going to Heaven and I will see you there . . . .

A handwritten note at the bottom of the letter stated, "I gusse [sic] you got your closuer! [sic] goodBye my Love! I Love you!"

About a month later, on September 22, 2015, at Appellant's pretrial bond

19

reduction hearing, the prosecutor relied on the emails and letter described above and pictures depicting the gas cans, matches, and lighter in cross-examining Appellant. Appellant admitted in the hearing that he was "very depressed" after Lean09 left. At the end of the hearing, the prosecutor argued that the case

> had a very profound impact on [Appellant's] psyche. He . . . is suicidal, wrote these letters and . . . even took steps to carry out . . . his ideations of suicide with the gasoline and the matches and . . . the lighters to kill all the pets, and even talks about the victim as it relates to her life and how long it's going to be.
>
> . . . [A]s desperate as he is, . . . and [given] his frame of mind, . . . lowering this bond would be improper . . . .

## D. The Trial Court Did Not Abuse Its Discretion by Not Informally Inquiring into Appellant's Competency to Stand Trial.

These items, however—Appellant's alleged mental illnesses of pedophilia and depression, his alleged mental state at the time of his arrest, and the State's reliance on evidence thereof to argue against a bond reduction almost four months before trial, are not suggestions of incompetency to stand trial. "Criminal offenses frequently seem senseless, but the acts themselves do not necessarily equate to a suggestion of incompetence." *Moore v. State*, Nos. 02-15-00381-CR, 02-15-00382-CR, 2016 WL 4474354, at *3 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication). We therefore reject Appellant's contention that the State's charging him with continuous sexual abuse of a child evidences his incompetency to stand trial. Further, the relevant time frame for determining competency is at the time of the proceedings. *See id.* at *4; *see also Morris v. State*, 301 S.W.3d 281, 292–93 (Tex. Crim. App. 2009)

20

("[T]he competency question assesses the defendant's mental condition at the time of trial."); *Baker v. State*, No. 04-14-00676-CR, 2016 WL 1588278, at *3 (Tex. App.—San Antonio Apr. 20, 2016, pet. ref'd) (mem. op., not designated for publication). Finally, a defendant's mental illness, past or present, absent credible evidence that because of it, he lacks "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]," Tex. Code Crim. Proc. Ann. art. 46B.003(a), "does not equate to a suggestion of incompetency." *Moore*, 2016 WL 4474354, at *3 (citing *Turner*, 422 S.W.3d at 691); *Demarsh*, 2016 WL 1267702, at *5–6; *Graves v. State*, No. 02-15-00141-CR, 2015 WL 9244767, at *3–4 (Tex. App.—Fort Worth Dec. 17, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding that a defendant's suicide attempt absent "evidence of severe mental illness" was "not a suggestion of" incompetency). Thus, Appellant's alleged pedophilia, depression, and suicidal ideations—and the State's reliance on his depression and suicidal ideations in a pretrial bond hearing about a month after his arrest—do not suggest that he was incompetent to stand trial almost five months after his arrest.

Even in the bond hearing, Appellant testified coherently, logically, and rationally and was responsive to questions asked of him. At the short December 1, 2015 arraignment hearing, Appellant answered the two questions asked of him succinctly and clearly. Nothing in the record of the trial, which began on January 11, 2016, almost five months after Appellant's arrest, demonstrates any sign of

21

incompetency. Appellant chose to testify at the guilt-innocence phase of trial and did so extensively on both direct examination from Trial Counsel and cross-examination by the prosecutor. Appellant's testimony was rational, logical, and coherent. He testified about his mental state:

- He was depressed when he touched Lean09's crotch on two separate occasions;

- Afterward, he limited his alcohol and "got some things to help [him] get out of the depression";

- He was depressed and suicidal after Lean09 left; and

- His depression and suicidal tendencies had significantly improved since he had been in jail.

Accordingly, we conclude that the trial court did not abuse its discretion by failing to sua sponte conduct an informal inquiry into Appellant's competency to stand trial. Because nothing triggered an informal inquiry, a formal hearing was likewise not required in this case. *See* Tex. Code Crim. Proc. Ann. arts. 46B.005(a), (b), 46B.021(b) (West 2018); *Boyett*, 545 S.W.3d at 563. The trial court therefore did not abuse its discretion by not holding a competency hearing. We overrule Appellant's first issue.

## IV. SWEARING-IN OF LEAN09

In his second issue, Appellant complains that Lean09 did not give an oath to tell the truth before testifying at trial. *See* Tex. R. Evid. 603. The record shows that Lean09 was sworn in along with her sister, Investigator Young, and another potential witness who ultimately did not testify. Appellant alleges,

22

however, that Lean09 did not raise her hand or speak when the trial court swore in the four potential witnesses simultaneously. Appellant did not bring his complaint to the trial court's attention.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

Appellant did not object in the trial court that Lean09 did not raise her hand or recite the oath; he therefore failed to preserve error. *See* Tex. R. App. P. 33.1(a); *Castillo v. State*, 739 S.W.2d 280, 298 (Tex. Crim. App. 1987), *cert. denied*, 487 U.S. 1228 (1988); *Beck v. State*, 719 S.W.2d 205, 211–12 (Tex. Crim. App. 1986); *Sanchez-Lopez v. State*, No. 05-16-00513-CR, 2017 WL 2289033, at *3 (Tex. App.—Dallas May 25, 2017, no pet.) (mem. op., not designated for publication). We overrule Appellant's second issue.

23

## V.  BIAS OF VENIRE PANEL AND JURY

In his fourth issue, Appellant complains about jury selection and the seated jury, and he includes complaints about the state of the appellate record regarding voir dire.  Appellant forfeited his jury selection complaints by not raising them at trial.  *See* Tex. R. App. P. 33.1(a); *Douds*, 472 S.W.3d at 674; *Smallwood v. State*, 471 S.W.3d 601, 608 (Tex. App.—Fort Worth 2015, pet. ref'd) (op. on reh'g).  Also, this court has already resolved Appellant's complaints about alleged deficiencies in the appellate record against him.[7]  We overrule Appellant's fourth issue.

## VI.  ALLEGED PROSECUTORIAL MISCONDUCT

In his fifth issue, Appellant complains of alleged prosecutorial misconduct both at trial and outside of trial, including criminal activity; witness intimidation; knowing reliance on nonexistent, false, and perjured evidence; and improper argument.  Appellant did not preserve any of his complaints of prosecutorial misconduct or improper argument in the trial court; he therefore forfeited them. *See Clark v. State*, 365 S.W.3d 333, 339–40 (Tex. Crim. App. 2012); *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *see generally* Tex. R. App. P. 33.1(a); *Douds*, 472 S.W.3d at 674.  We note that our

---

[7]All pending motions in this case are denied; any pending motions for rehearing en banc of previously issued orders are denied in a separate order issued this date.

24

review of the record yielded no evidence that the prosecutorial team engaged in criminal activity, witness intimidation, or knowing reliance on nonexistent, false, or perjured evidence. We overrule Appellant's fifth issue.

## VII. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his third issue, Appellant contends that Trial Counsel was ineffective and that his defense was thereby prejudiced.

**A. Appellant Must Prove by a Preponderance of the Evidence Both Deficient Representation by Trial Counsel and a Reasonable Probability that Without It, the Outcome of His Trial Would Have Been Different.**

Appellant argues that this court should evaluate his claim under *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984), rather than *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). We disagree. The Texas Court of Criminal Appeals recently highlighted the difference between the two standards:

> In the usual case, an appellant, in order to obtain a reversal of his conviction on the ground of ineffective assistance of counsel, must demonstrate both deficient performance and prejudice. That is, he must demonstrate that: (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*[,] 466 U.S. at 687, 104 S. Ct. [at 2064]. However, if an appellant can demonstrate that defense counsel "entirely fail(ed) to subject the prosecution's case to meaningful adversarial testing," so that there was a constructive denial of the assistance of counsel altogether, then prejudice, because it is "so likely," is legally presumed. . . . *Cronic*, 466 U.S. at 658–659, 104 S. Ct. [at 2046–47]. *See also Bell v. Cone*, 535 U.S. 685, 696–697, 122 S. Ct. 1843, [1851] (2002) (noting that, under *Cronic*, defense counsel's failure to test the prosecution's case must be "complete" before prejudice is

presumed); *Strickland*[,] 466 U.S. at 692, 104 S. Ct. [at] 20[67] ("constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice"); *Ex parte McFarland*, 163 S.W.3d 743, 752–53 (Tex. Crim. App. 2005) (discussing constructive denial of counsel and presumed prejudice).

In determining whether defense counsel "entirely fail(ed) to subject the prosecution's case to meaningful adversarial testing," we are guided by the following passage in *Cronic*:

> [T]he adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of advocate. The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. 466 U.S. at 656–657, 104 S. Ct. [at] 20[45–46] (citation and footnotes omitted).

In the usual case in which an ineffective-assistance claim is made, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

*Cannon v. State*, 252 S.W.3d 342, 348–50 (Tex. Crim. App. 2008) (op. on reh'g) (footnotes, selected citations, and internal quotation marks omitted). Here, Trial Counsel filed a motion to substitute counsel on December 22, less than three weeks before the trial was scheduled. He filed a jury election, participated in voir dire, gave an opening statement, objected at trial, cross-examined the girls, directly examined Appellant, and gave closing arguments in the guilt phase and the punishment phase. We therefore do not presume prejudice, *see, e.g.*,

26

*Thibodeaux v. State*, 521 S.W.3d 421, 424 (Tex. App.—Amarillo 2017, pet. ref'd); instead we apply the usual *Strickland* standard, 466 U.S. at 687, 104 S. Ct. at 2064.

To establish ineffective assistance of counsel at trial, an appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Id.*; *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The issue for the performance prong is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308.

An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Direct appeal is

usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14. Ineffective assistance claims are usually best addressed by a postconviction writ of habeas corpus. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *see Thompson*, 9 S.W.3d at 814 & n.6; *Ex parte Torres*, 943 S.W.2d 469, 475–76 (Tex. Crim. App. 1997).

**B.      Our Review of Counsel's Performance Is Highly Deferential, with a Strong Presumption that It Is Not Deficient.**

In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, we should not conclude that counsel's performance was

28

deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

**C. Our Focus in Assessing Any Prejudice Caused by Counsel's Performance is Whether It Affected the Fundamental Fairness of the Trial.**

The ultimate focus of our inquiry into the effects of counsel's performance must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2070. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696, 104 S. Ct. at 2069.

**D. We Do Not Have to Address Both Prongs.**

There is no requirement that we approach the two-pronged inquiry of *Strickland* in any particular order or even that we address both components of the inquiry if the defendant makes an insufficient showing on one component. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

**E. Appellant Alleges that Trial Counsel Rendered Deficient Performance.**

Specifically, Appellant contends that Trial Counsel:

- Did not offer exculpatory evidence;

- Failed to subpoena any witnesses;

- Failed to investigate the girls' motives to lie and Appellant's background for truthfulness, for history of mental illness, or "as a potential victim of [Lean09's] family";

- "[D]id not put up a fight in court";

29

- Failed to formulate a defensive theory;

- Failed to defend Appellant;

- "[W]as well aware of [Appellant's] incompetent mental state yet did nothing to help him";

- Told the venire panel that when he was a prosecutor, he "regularly put his friends on the jury in an attempt to secure unlawful convictions";[8]

- Never brought up the possibility that the State allowed his "accusers" access to his home and that they could have destroyed exculpatory evidence;

- Did not cross-examine Nurse Fugate about the absence of physical evidence and did not object to her testimony;

- Did not object to the prosecutor's allegation that the female clothing found in Appellant's room was Lean09's;

- Did not develop the theory that the girls believed they would instantly acquire millions of dollars upon Appellant's death or incarceration;

- Did not cross-examine Investigator Young regarding his alleged perjury during grand jury proceedings or his alleged libel and defamation of Appellant or object to his testimony;

- Did not impeach the State's witnesses;

- Did not suppress the recorded phone call;

- Objected only three times;

- Filed only one motion, and that was a motion to substitute counsel;

- Had only nine and a half days to prepare for trial;

- "Helped stack the jury with [his] friends . . . and the [district

---

[8]Trial counsel admitted trying to get friends on the jury when he was a prosecutor but also admitted that it made no difference in the verdict because "it was too big of a deal to cheat to help your friend . . . ."

attorney's] team";

- Violated Texas Rule of Evidence 503 "with a clear conflict of interest";

- Told Appellant that the trial court would not grant a continuance; and

- Lied to Appellant.

**F.    The Record Does Not Support Appellant's Claims of Deficiency.**

Appellant did not raise ineffective assistance of Trial Counsel in a motion for new trial and have a hearing, so all his claims lack support in the record.

Trial Counsel participated in the case.  He filed a motion to substitute and a jury election, participated in voir dire, opening and closing statements, and the taking of evidence, and filed a motion for new trial.  His theory of the case at guilt-innocence was that the girls were lying, and he cross-examined them both, spending most of his time questioning Lean09.  He objected to the admission of the recorded phone call and to L.D.'s testimony regarding Lean09's phone call asking L.D. to come get her.  The six exhibits he offered were admitted in evidence.  In questioning Appellant in his case in chief, Trial Counsel elicited evidence that Appellant had never had sex with Lean09, that Appellant believed Lean09 was on drugs during the trial, and that Appellant believed the girls' motive for reporting the sexual abuse to the police was L.D.'s desire for money.

The record does not support Appellant's allegations that:

- He asked Trial Counsel to subpoena more than fifty witnesses;

- Trial Counsel failed to investigate;

31

- Exculpatory evidence existed;

- The jury pool was tainted;

- Trial Counsel helped "stack the jury";

- Trial Counsel had a "clear conflict of interest";

- Trial Counsel told Appellant the trial court would not grant a continuance; or

- Trial Counsel lied to Appellant.

Regarding the remaining allegations, *first*, as we have already held, no suggestion of incompetency triggered an inquiry into Appellant's competency to stand trial, and there is no evidence that Appellant's mental state was such that Trial Counsel should have questioned Appellant's competency to stand trial. *Second*, Trial Counsel's admitting to the venire panel that as a prosecutor, he "used to sneak [his] friends on the jury" appears to serve the proper purpose of removing any jurors who might have been biased for the State because of their relationships with the prosecutors or judge. *See* Tex. Code Crim. Proc. Ann. art. 35.16(a)(9) (West 2006); *McKinley v. State*, No. 02-13-00036-CR, 2014 WL 4105292, at *6–9 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.) (mem. op., not designated for publication). *Third*, Trial Counsel's failure to cross-examine Investigator Young and Nurse Fugate or to challenge the ownership of the panties found in Appellant's room and characterized by Lean09 as hers could have been a trial strategy designed to minimize the risk of the jury hearing even more incriminating evidence. *See, e.g.*, *Walston v. State*, 697 S.W.2d 517,

519 (Tex. App.—San Antonio 1985, pet. ref'd). *Fourth*, Lean09 consented to Investigator Young's listening in and recording the recorded phone call; the trial court's admission of it into evidence was therefore not clearly error. *See* Tex. Penal Code Ann. § 16.02(c)(3)(A) (West Supp. 2017) (allowing a party to consent to the recording of the call); *Wesley v. State*, No. 08-14-00121-CR, 2016 WL 1730356, at *4–5 (Tex. App.—El Paso Apr. 29, 2016, pet. ref'd) (not designated for publication) (in a case transferred from this court, holding minor party can consent to recording); *cf. Green v. State*, No. 02-10-00082-CR, 2011 WL 3426278, at *3 (Tex. App.—Fort Worth Aug. 4, 2011, pet. ref'd) (mem. op., not designated for publication) (holding minor's consent to police officer's warrantless seizure of evidence valid) (op. on pet. for discretionary review).

Because Appellant has failed to sustain his burden to show Trial Counsel's actions or inactions were not based on reasonable trial strategy, *see Butler v. State*, 716 S.W.2d 48, 54 (Tex. Crim. App. 1986), he has failed to sustain his burden to show ineffective assistance of Trial Counsel. *See, e.g.*, *Chacon v. State*, No. 02-16-00012-CR, 2016 WL 5443358, at *2 (Tex. App.—Fort Worth Sept. 29, 2016, pet. ref'd) (mem. op., not designated for publication). We overrule Appellant's third issue.

## VIII. ALLEGED JUDICIAL BIAS

In his sixth issue, Appellant contends that the trial court exhibited bias against him by:

- allowing Lean09 to testify after she allegedly did not raise her hand

or speak when the trial court swore her in as a witness;

- not inquiring into Appellant's competency to stand trial;

- not remarking on Appellant's allegedly ineffective Trial Counsel; and

- not attempting to cure the prosecutor's alleged misconduct or improper argument.

Absent a clear showing of judicial bias, we presume that a trial court acted impartially. *Tapia v. State*, 462 S.W.3d 29, 44 (Tex. Crim. App. 2015); *Castro v. State*, No. 02-17-00196-CR, 2018 WL 1096064, at *3 (Tex. App.—Fort Worth Mar. 1, 2018, no pet.) (mem. op., not designated for publication).

The behavior Appellant complains of here is not action or comments but inaction. In a slightly different context, the Texas Court of Criminal Appeals has explained, "[T]he responsibility of asserting forfeitable rights belongs to the litigants, and not the trial judge. . . . A court of appeals should not find error in a trial judge's inactivity when contemporaneous action is neither requested nor independently required." *Proenza v. State*, 541 S.W.3d 786, 797 (Tex. Crim. App. 2017). The trial court's not interceding during Lean09's alleged failure to take the oath and the prosecutor's alleged misconduct is therefore not error.

However, the Court also held that

[w]hen it comes to non-forfeitable rights, the legal responsibility of assuring compliance with these rights falls squarely upon the trial judge. And when these kinds of rights are at stake, a court of appeals may rightly find error in a trial judge's conduct, even when the parties do not complain at trial, because the law imposes upon the judge a duty that exists independently of the parties' decision to speak up.

*Id.* That distinction does not afford Appellant any relief here, though, because we

have already held that the trial court did not abuse its discretion by not inquiring into Appellant's competency to stand trial and that Appellant failed to satisfy his burden of proving ineffective assistance of Trial Counsel. We consequently overrule Appellant's sixth issue.

## IX.   CONCLUSION

Having overruled Appellant's seven issues, we affirm the trial court's judgment.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL:  SUDDERTH, C.J.; KERR and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 23, 2018